**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

IN RE YASMIN AND YAZ )
(DROSPIRENONE) MARKETING , )
SALES PRACTICES AND PRODUCTS )
LIABILITY LITIGATION, )
――――――――――――――――――― )  **09-MD-1200-DRH**
 )  **MDL NO. 2100**
This Document Relates To: )
 )
――――――――――――――――――― )
 )
DANA A. MARTIN, Independent )
Administrator of the Estate of )
SOPHIA CLAIRE MARTIN, Deceased, )
 )
 )
 Plaintiff, )  **11-CV-12606-DRH-PMF**
 )
 v. )
 )
MOODY'S PHARMACY, SEAMUS N. )
KLOOS, LESLIE SAUZEK, BAYER )
CORPORATION, BAYER )
HEALTHCARE PHARMACEUTICALS, )
INC., BAYER HEALTHCARE, LLC, )
BAYER SCHERING PHARMA AG, )
and BAYER AG, )
 )
 Defendants. )

## MEMORANDUM & ORDER

**HERNDON, Chief Judge:**

This matter is before the Court on plaintiff's motion to remand (Doc. 6) to

which the defendants have filed a response (Doc. 12). Also before the Court is a

related motion to dismiss filed by defendants K&S Pharmacies of Southern Illinois

Ltd., d/b/a Moody Health Mart Pharmacy (improperly named "Moody's Pharmacy") (hereinafter "Moody's"), Seamus N. Kloos, and Leslie Sauzek (hereinafter "the Pharmacists") (Doc. 5) to which plaintiff has filed a response (Doc. 11) and defendants a reply (Doc. 13).

## I.   **BACKGROUND**

This case is part of a Multi District Litigation action, *In re Yasmin and YAZ (Drospirenone) Marketing, Sales Practices and Products Liability Litigation,* No. 09-MD-2100-DRH.  Plaintiff, a citizen of Randolph County, Illinois, originally filed this wrongful death lawsuit in the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois, alleging that plaintiff's decedent, Sophia Claire Martin, died as a result of taking the prescription oral contraceptive YAZ.  Her complaint seeks, inter alia,[1] recovery against defendants Moody's and the Pharmacists (the non-diverse defendants) for negligence under the Illinois Survival Act (Count I) and for wrongful death (Count II). Plaintiff alleges that these defendants failed to properly warn the decedent of the risks involved in taking YAZ in light of the fact that she suffered from

---

[1]In addition, plaintiff has filed several claims against Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare, LLC, Bayer Schering Pharma AG, and Bayer AG (the 'Bayer Defendants") including:  Negligence (Count III), Wrongful Death (Count IV), Strict Liability-Design Defect: Survival Action (Count V), Strict Liability-Design Defect: Wrongful Death (Count VI), Strict Liability-Failure to Warn: Survival Action (Count VII), Strict Liability-Failure to Warn: Wrongful Death (Count VII), Negligent Design: Survival Action (Count IX), Negligent Design: Wrongful Death (Count X), and Violation of the Illinois Consumer Fraud and Deceptive Businesses Practices Act (Count XI).

Only Counts I and II are at issue in these pending motions.

an arteriovenous malformation of the right lower extremity (AVM).

Defendants removed the action pursuant to 28 U.S.C. §§ 1441(b) and 1446, asserting that this Court has jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332, and further claiming that the non-diverse defendants, Moody's and the Pharmacists, were fraudulently joined to defeat federal jurisdiction.  Defendants have filed a motion to dismiss (Doc. 5) seeking dismissal of the non-diverse defendants on the grounds that under Illinois law, pharmacy defendants do not have a duty to warn of all potential risks involved with prescription drugs.  Plaintiff has filed a response (Doc. 12) asserting  that Illinois law supports her claims against the non-diverse defendants, and therefore, this matter should be remanded to state court for trial.

In Count I of the complaint, plaintiff specifically provides:

> 10. At all times prior to the death of Sophia Claire Martin, Moody's Pharmacy, by and through its employee/agents, including, but not limited to Seamus N. Kloos and Leslie Sauzek, knew, or should have known, that Sophia Claire Martin, had been diagnosed with an arteriovenous malformation.
>
> 11. At all times relevant herein, the risk of hemorragh from an arteriovenous malformation was well known in the medical and related healthcare profession. Therefore, prior to the death of Sophia Claire Martin, Moody's Pharmacy, by and through its employee/agent, including Seamus N. Kloos and/or Leslie Sauzek, knew[,] or should have known that Sophia Claire Martin was at a higher risk of hemorrhage because of her arteriovenous malformation.
>
> 12. At all times relevant herein, Moody's Pharmacy, by and through its employee/agent, including Seamus N. Kloos and/or Leslie Sauzek, knew, or should have known, that the existence of an arteriovenous malformations [sic] exposed the individual, such as

Sophia Claire Martin, to a higher risk of bleeding, including the formation of clots.

13. At all times relevant herein, Moody's Pharmacy, by and through its employee/agent, including Seamus N. Kloos and/or Leslie Sauzek, knew, or should have known, that there was an increased risk of complications in the use of YAZ in individuals, such as Sophia Claire Martin, who were at a higher risk of bleeding, including the formation of clots because YAZ contained a new type of progestin known as drospirenone.

14. As a pharmacy dispensing prescription drugs, Mood Moody's Pharmacy, by and through its employee/agent, including Seamus N. Kloos and/or Leslie Sauzek, knew, or should have known, that the progestin, drospirenone, had been associated with deep vein thrombosis and thus posed a higher risk for the development of clots in individuals like Sophia Claire Martin.

15. On June 23, 2009, a few days prior to her death, Sophia Claire Martin and her mother, Dana A. Martin, purchased YAZ from Moody's Pharmacy . . . .

16. Prior to and/or at the time of the purchase of YAZ from Moody's Pharmacy, Dana A. Martin had a conversation with Seamus Kloos, and specifically inquired about the use of the prescription drug YAZ for her daughter, Sophia Claire Martin. At the time of this conversation, Seamus N. Kloos was working as a pharmacist for Moody's Pharmacy and was acting within the scope of his employment for Moody's Pharmacy.

17. Upon the inquiry made to Seamus Kloos by Dana A. Martin, Mr. Kloos undertook a duty to advise Dana A. Martin, as the agent for Sophia Claire Martin, that the drug, YAZ, was an acceptable contraceptive for Sophia Claire Martin and failed to advise Dana A. Martin of the dangers associated with the use of YAZ for those individuals with potential bleeding disorders, such as Sophia Claire Martin. In fact, Seam~us Mloos affirmatively advised Dana A. Martin that YAZ would be an acceptable contraceptive for use by Sophia Claire Martin.

4

18.    Prior to and/or at the time of the purchase of YAZ from Moody's Pharmacy, Dana A. Martin had a conversation with Seamus Kloos, and specifically inquired about the use of the prescription drug YAZ for her daughter, Sophia Claire Martin. At the time of this conversation, Seamus N. Mloos was working as a pharmacist for Moody's Pharmacy and was acting within the scope of his employment for Moody's Pharmacy.

17.    Upon the inquiry made to Seamus Kloos by Dana A. Martin, Mr. Kloos undertook a duty to advise Dana A. Martin, as the agent for Sophia Claire Martin, that the drug, YAZ, was an acceptable contraceptive for Sophia Claire Martin and failed to advise Dana A. Martin of the dangers associated with the use of YAZ for those individuals with potential bleeding disorders, such as Sophia Claire Martin. In fact, Seam~us Mloos affirmatively advised Dana A. Martin that YAZ would be an acceptable contraceptive for use by Sophia Claire Martin.

18.    In addition to her conversation with Seamus Kloos, prior to and/or at the time of the purchase of YAZ from Moody's Pharmacy, Dana A. Martin had a separate conversation with Leslie Sauzek. In this conversation, Dana A. Martin specifically asked Leslie Sauzek whether the prescription drug YAZ posed any special contraindications for her daughter, Sophia Claire Martin. At the time of this conversation, Leslie Sauzek was working as a pharmacist for Moody's Pharmacy and was acting within the scope of her employment for Moody's Pharmacy.

19.    Upon the inquiry made to Leslie Sauzek by Dana A. Martin, Ms. Sauzek  undertook a duty to advise Dana A. Martin, as the agent for Sophia Claire Martin, that the drug, YAZ, was an acceptable contraceptive for Sophia Claire Martin and failed to advise Dana A. Martin of the dangers associated with the use of YAZ for those individuals with potential bleeding disorders, such as Sophia Claire Martin. In fact, Leslie Sauzek affirmatively advised Dana A. Martin that YAZ would be an acceptable contraceptive for use by Sophia Claire Martin.

> 20.    Neither Dana A. Martin nor Sophia Claire Martin had any training in healthcare or the delivery of pharmaceuticals at the time the YAZ was purchased from Moody's Pharmacy.

Count II contains identical allegations in support of the plaintiff's claim for wrongful death.   The Court notes that the allegations of this most artfully crafted complaint do not specify that Moody's or The Pharmacist defendants had actual knowledge of the decedent's AVM condition.  There is no allegation that anyone had specifically advised the non-diverse defendants of the decedent's condition, or that the pharmacy had previously filled prescriptions related to the decedent's AVM condition, or that the pharmacy had asked about any complicating factors.  All that is alleged is that the non-diverse defendants should have known of the risks inherent in YAZ for a person with AVM.

## II.    ANALYSIS

### A. LEGAL STANDARD

#### 1. Removal

A civil action may be removed to federal court if the district court has original jurisdiction. 28 U.S.C. § 1441. Courts have original jurisdiction of civil actions between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Jurisdiction depends on the amount in controversy when the federal suit began. *Meridian Sec. Ins. v. Sadowski*, 441 F.3d 536, 538 (7th Cir. 2006); *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938); see also *Carroll v. Stryker*

*Corp.*, 658 F.3d 675, 680 (7th Cir. 2011)(amount in controversy is evaluated as of the time of removal). In addition, the amount in controversy stated in the plaintiff's complaint generally controls, unless it is legally impossible. *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 815 (7th Cir. 2006); *Meridian*, 441 F.3d at 541.

However, if the complaint does not establish the amount in controversy, the party invoking federal jurisdiction can use other evidence. See *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541–42 (7th Cir. 2006); *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427–28 (7th Cir. 1997). The party must set out the basis of federal jurisdiction and prove any contested factual allegation. Meridian, 441 F.3d at 540 (citing Fed. R. Civ. P. 8(a)(1) & 12(b)(1)); *Carroll v. Stryker Corp.*, 658 F.3d 675, 680 (7th Cir. 2011). It must prove the jurisdictional facts by a preponderance of the evidence. *Blomberg v. Serv. Corp. Intern.*, 639 F.3d 761, 763 (7th Cir. 2011); *Meridian*, 441 F.3d at 543. Moreover, burden of the defendant who removes, is to show "what the plaintiff hopes to get out of the litigation," not that the plaintiff will collect more than $75,000 if he prevails. *Rising-Moore*, 435 F.3d at 816; *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005) ("[P]art of the removing party's burden is to show not only what the stakes of the litigation could be, but also what they are given the plaintiff's actual demands."). When the plaintiff provides little information about the value of his claims, "a good-faith estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006) (citing *Rubel v. Pfizer, Inc.*, 361 F.3d 1016, 1020 (7th Cir.

2004))

The removal statute, 28 U.S.C. § 1441, is construed narrowly, and doubts concerning removal are resolved in favor of remand. *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir.1993). Defendants bear the burden to present evidence of federal jurisdiction once the existence of that jurisdiction is fairly cast into doubt. *See In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 607 (7th Cir. 1997). "A defendant meets this burden by supporting [its] allegations of jurisdiction with 'competent proof,' which in [the Seventh Circuit] requires the defendant to offer evidence which proves 'to a reasonable probability that jurisdiction exists.'" *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997) (citations omitted). However, if the district court lacks subject matter jurisdiction, the action must be remanded to state court pursuant to 28 U.S.C. § 1447(c). The statute regarding diversity jurisdiction, 28 U.S.C. § 1332, requires complete diversity between the parties plus an amount in controversy which exceeds $75,000, exclusive of interest and costs. Complete diversity means that "none of the parties on either side of the litigation may be a citizen of the state of which a party on the other side is a citizen." *Howell v. Tribune Entertainment Co.*, 106 F.3d 215, 217 (7th Cir. 1997) (citations omitted).

## 2. Fraudulent Joinder

The Seventh Circuit has recently discussed the nature of fraudulent joinder in another action which is also a part of this Multi-District Litigation proceeding, *Walton v. Bayer Corp.*, 643 F.3d 994 (7th Cir. 2011). In *Walton* the plaintiff, a citizen of

8

Illinois, filed a state court action against Bayer and Niemann Foods, Inc, a non-diverse defendant which operated the pharmacy where plaintiff filled her prescription for her oral contraceptive, Yasmin.  The Seventh Circuit noted that when a non-diverse defendant is "joined simply to defeat removal, as might be inferred from a demonstration that the claim against that defendant had no possible merit" fraudulent joinder exists and "bars remand to state court." 643 F.3d at 999. *Walton* recognized that this is an "exception to the requirement of complete diversity." *Id.*

The doctrine of fraudulent joinder is triggered when a defendant demonstrates that "after resolving all issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Poulos v. Naas Foods, Inc*., 959 F.2d 69, 73 (7th Cir. 1992); accord,  *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 764 (7th Cir. 2009). If there is "any reasonable possibility" that the plaintiff may prevail against a defendant, the defendant is not fraudulently joined. *Schur*, 577 F.3d at 764 (citing *Poulos*, 959 F.2d at 73). The defendant's burden is heavy, possibly even heavier than his burden with a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Schur*, 577 F.3d at 764.

In determining whether a non-diverse defendant has been fraudulently joined, the Court has a limited power to resolve issues of fact. This may occur, " '[i]n a few cases, in which a plaintiff has stated a claim but has misstated or omitted discrete facts, the district court may. . .pierce the pleadings and conduct a summary inquiry'

as to the issue of fraudulent joinder." *Hill v. Olin Corp.*, No. 07-CV-0054-DRH, 2007 WL 1431865, at *4 (S.D.Ill. May 14, 2007) (quoting *Larroquette v. Cardinal Health 200, Inc.*, 466 F.3d 373, 376 (5th Cir.2006)). In this inquiry, "piercing the pleadings is 'a strictly circumscribed inquiry limited to uncontroverted summary evidence which establishes unmistakably that a diversity-defeating defendant cannot possibly be liable to a plaintiff under applicable state law.' " *Id.* at *6 (quoting *Rutherford v. Merck & Co.*, 428 F.Supp.2d 842, 848 (S.D.Ill.2006)). See also, *Faucett v. Ingersoll-Rand Mining & Mach. Co.*, 960 F.2d 653, 654-55 (7th Cir.1992) (in a products liability action, fraudulent joinder was established by a diversity-defeating defendant's uncontradicted affidavit stating that he had nothing to do with the machine that caused the plaintiff's injury). A district court is required to resolve both issues of fact and law in favor of the plaintiff, and should not pre-determine the facts of the claim. *Hill v. Olin Corp.*, 2007 WL 14318565 (S.D. Ill. 2007). The Court's role in evaluating allegations of fraudulent joinder is "to determine whether Plaintiff's complaint provides a reasonable basis for predicting that the plaintiff might be able to recover against an instate defendant .... not to ascertain the merits of [the] claim." *Id.* at *4.

The Seventh Circuit noted in *Walton* that "proof of fraud, though sufficient, is not *necessary* for retention of federal jurisdiction–all that's required is proof that the claim against the non-diverse defendant is utterly groundless, and as a groundless claim does not invoke federal jurisdiction," 643 F.3d at 999 (emphasis added). *Walton* further directed district courts that, "the district judge must dismiss [the

10

non-diverse defendant] before ruling on the plaintiff's motion to remand." *Id.*  Given that directive, the Court will first consider the motion to dismiss filed by the non-diverse defendants.

**III.    DEFENDANTS' MOTION TO DISMISS (Doc. 5)**

Defendants Moody's and the Pharmacists seek dismissal on the grounds that they were fraudulently joined and plaintiff cannot bring a claim against them under Illinois Law.  In Illinois, a pharmacy (and therefore pharmacists, including two defendants in this case) can be held to a duty to warn "where there is unequal knowledge, actual or constructive [of a dangerous condition], and the defendant[,] possessed of such knowledge, knows or should have known that harm might or could occur if no warning is given."  *Kirby v. General Paving Co.*, 229 N.E.2d 453, 457 (Ill. App. Ct. 2002) (quoted in *Happel v. Wal-Mart Stores, Inc.*, 766 N.E.2d 118,1123 (Ill. 2002)).  The issue of duty is one of law, which is the determination of the Court. *Id.* (quoting *Ward v. Kmart Corp.*, 554 N.E.2d 223, 226 (1990).

In resolving the issue of the existence of a duty, Illinois law looks to certain "relevant factors. These include: (1) the reasonable forseeability that the defendant's conduct may injury another, (2) the likelihood of an injury occurring, (3) the magnitude of the burden of guarding against such an injury, and (4) the consequences of placing that burden on the defendant." 766 N.E.2d at 1123-24.

In *Walton*, the Seventh Circuit explained that in "Illinois a manufacturer or pharmacy must warn a customer of dangers known to it of which physicians have not been warned, but not of dangers of which physicians have been warned." 643 F.3d

11

at 1000.  So, as in *Walton,* "if [the non-diverse defendants knew] that the [decedent] was abnormally susceptible to a particular side effect of [YAZ], [they] had a duty to warn her or her physician."  *Id.* At 1000-01.  If, however, the plaintiff fails to allege that the pharmacy defendants knew anything about her susceptibility, then they "have the full protection of the learned-intermediary doctrine." *Id.*

    1.    LEARNED INTERMEDIARY DOCTRINE

Under the learned intermediary doctrine, the manufacture of a prescription drug is "excused" from "having to warn consumers of the drug's adverse side effects; it need warn only physicians, so that armed with the warning they can make a medical decision to prescribe or not to prescribe the drug for a particular patient." 643 F.3d at 999-1000.  The Illinois Supreme Court in *Happle v. Wal-Mart Stores, Inc.*, 766 N.E.2d 1118, 1126 explained:

> The underlying rationale of the learned intermediary doctrine is that, with regard to prescription drugs, which are likely to be complex medicines, it is the prescribing physician who knows both the propensities of the drug and the susceptibilities of his patient, and who therefore is in the best position to prescribe a particular drug for the patient.

Further, as *Happle* discussed, when the pharmacy has actual knowledge of both a patient's medical condition (in *Happle*, allergy to certain drugs) and that the prescribed drug was contraindicated for persons with such susceptibility, there is a duty to warn.  *Id.* at 1128.  The *Happle* court was careful to note. however, that this duty applies "in situations . . . where a pharmacy *has knowledge* that a prescribed medication is contraindicated for a specific customer." *Id.* (emphasis added).

12

The physician who issues the prescription acts as the "'learned intermediary'–the medical professional who, equipped with the knowledge imparted to him by the drug's manufacturer, determines, weighing benefit against risk, the drugs' suitability for a particular patient." *Walton*, 664 F.3d at 1000. The *Walton* court noted the logic behind limiting liability to pharmacies generally, finding that unless there is special knowledge of susceptibility of the consumer to a dispensed drug, there is no duty to warn. Specifically the court stated:

> Pharmacies (and normally other sellers in the chain of distribution that runs from the manufacturer to the ultimate consumer) can't be expected to warn their customers of the possible defects and dangers of the prescription drugs they sell. It would be senseless, especially given drug regulations by the Food and Drug Administration and the extensive tort liability of drug manufacturers, to make pharmacies liable in tort for the consequences of failing to investigate the safety of thousands of drugs.

643 F.3d at 1000. The court noted, however, that when a pharmacy has *specific* knowledge, it may be held responsible for failing to warn of adverse drug interaction and results.

> What a pharmacy sometimes knows, however, without investigation, and the manufacturer will not know and even a treating physician may not know, is susceptibilities of particular customers of the pharmacy to the side effects of a drug that it sells them–susceptibilities because of other drugs that the pharmacy knows the customer is taking, or a pre-existing physical or mental condition (again known to it) that makes the drug contraindicated for the customer–and then it must warn either the customer or his physician. ***But not otherwise***.

*Id.* (emphasis added). As the *Walton* court noted, Illinois courts have reached this

result, calling it "an application of the learned-intermediary doctrine." *Id.* (collecting cases). Therefore, "a manufacturer or a pharmacy must warn a customer of dangers known to it of which physicians have not been warned, but not of dangers of which physicians have been warned." *Id. Walton,* therefore, limited pharmacy liability to knowledge of susceptibility. *Id.*

Plaintiff's complaint was filed on July 8, 2011, which means that it was filed more than 30 days after the *Walton* opinion was published on May 23, 2011. Although plaintiff alleges a special duty between the decedent and the non-diverse defendant, the complaint is silent as to any specific knowledge the non-diverse defendants had of the plaintiff's decedent's medical condition. This case was removed from Illinois state court and, "Illinois is a fact-pleading jurisdiction that requires a plaintiff to present a legally and factually sufficient complaint and a plaintiff must allege sufficient facts to state all the elements of the asserted cause of action." *Hanks v. Colter*, 959 N.E.2d 728, 734 (Ill. App. Ct. 2011) (citation omitted). The complaint, which is most carefully pleaded to avoid removal, alleges the following by the non-diverse defendants:

> 22. Defendants, Moody's Pharmacy, by and through its agents and employees, including, but not limited to Seamus N. Kloos and Leslie Sauzek, breached their duty of ordinary care to Sophia Claire Martin in light of their special knowledge regarding the increased risks of embolism and bleeding to Sophia Claire Martin in that they:
>   a. Carelessly and negligently failed to advise Sophia Claire Martin and/or Dana A. Martin, as agent for Sophia Claire Martin, of the risks of bleeding associated with the use of the prescription drug, YAZ; and/or,
>   b. Carelessly and negligently failed to advise Sophia Claire

14

Martin and/or Dana A. Martin, as agent for Sophia Claire Martin, that the risks of complications with the use of YAZ were higher than those of other available contraceptives in light of the use of the combination of ethinyl estradiol and drospirenone; and/or,

c.    Carelessly and negligently failed to advise Sophia Claire Martin and/or Dana A. Martin, as agent for Sophia Claire Martin, that the risks of adverse events with YAZ were not adequately tested and/or known;and/or,

d.    Carelessly and negligently failed to advise Sophia Claire Martin and/or Dana A. Martin, as agent for Sophia Claire Martin, that the risks of complications with the use of YAZ for an individual like Sophia ClaireMartin were greater with regard to serious and dangerous side effects including, but not limited to, pulmonary embolism, as well as other severe and personal injuries, physical pain and death.

But, once again, plaintiff simply does not allege anything which would establish specific knowledge by the non-diverse defendants of the decedent's medical condition, which then, in turn, would trigger the duty to warn decedent.

A.    *Petrillo* Doctrine Violation Claims

In support of both the removal petition based on fraudulent joinder, and, then in reference to the motion to dismiss, the defendants rely on the affidavits of Kloos and Sauzek(See, Exhibits F & G to Doc. 2). Before reaching the averments of the various affidavits, the Court notes that the plaintiff has raises the *Petrillo* doctrine, seeking to preclude the use of the pharmacists' affidavits for determination of the issue of fraudulent joinder. *Petrillo v. Syntex Labs, Inc.*, 499 N.E.2d 952, 957 (Ill. App. Ct. 1986). *Petrillo* applies when an ex parte communication has taken place between defense counsel and a treating physician, and "sanctions may be imposed upon the defendant, including reversal of the judgment in favor of the defendant and

15

the award of a new trial." *Nastasi v. Unite Mine Workers of Am. Union Hosp.*, 567 N.E.2d 1358, 1365 (Ill. App. Ct. 1991); *Morisch v. United States*, 653 F.3d 522, 527-28 (7th Cir. 2011).  In this case, the affidavits which plaintiff finds objectionable are those of named party defendants.   And, the affidavits were included with the removing defendants' removal petition in support of their assertion of jurisdiction based upon fraudulent joinder.  Plaintiff asserts, nonetheless, that because the non-diverse defendants had not entered their appearance in Illinois courts, the Bayer defendant could not have obtained discovery from those defendants, including the ability to take their affidavits, and therefore, that those affidavits should be stricken. Bayer defendants provide, in their response to the motion to remand, that the affidavits were obtained through the pharmacy defendants' counsel, and that the *Petrillo* doctrine does not apply to the pharmacy defendants in this particular case because they are parties to the action, and because they did not provide any more information than the complaint itself  reveals.

The Court notes that despite plaintiff's assertion to the contrary,  the non-diverse defendants were not required to file an entry of appearance in Illinois courts before consenting to removal in this Court (which they did, see Ex. B, Doc. 2). Nor is there a pharmacist-patient privilege extension of the *Petrillo* doctrine applicable in this case. To apply plaintiff's logic would be to effectively prohibit defendants joined by a plaintiff to a cause of action from communicating about their defense, a scenario not warranted by *Petrillo*.  Accordingly, to the extent that it is a motion, the Court **DENIES** plaintiff's motion to strike the affidavits of Kloos and Sauzek.

16

B.      Affidavits of Kloos, Sazeuk and Plaintiff

In his affidavit, Kloos states that at the time of the dispensing of YAZ to the decedent, he was unaware and had not been advised by anyone that the decedent had ever been diagnosed with any type of bleeding condition, including AVM;  that he never had a conversation with plaintiff or any other person, with respect to the prescription for YAZ; and that he did not advise plaintiff that YAZ was an acceptable contraceptive for the decedent.  He further states that as a pharmacist, he is unaware of the implications of an AVM diagnosis or any impact of oral contraceptives for someone with this condition, and that as a pharmacist he does not make recommendations with respect to what type of contraceptives should be used. (Exhibit F,  Doc. 2.)

Defendant Sauzek's affidavit (Exhibit G, Doc. 2), practically identically, provides that at the time of the dispensing of YAZ to the decedent Sauzek was unaware nor had she been advised by anyone that the decedent had been diagnosed with any type of bleeding condition, including AVM;  that she never had a conversation with plaintiff or any other person, with respect to the prescription for YAZ, and did not advise plaintiff that YAZ was an acceptable contraceptive for the decedent.  Sauzek further avers that she is unaware, as a pharmacist,  of the implications for contraceptives with respect to a diagnosis of AVM nor is she aware of the medical implications of such a diagnosis. She further states that as a pharmacist  she does not make recommendations with  respect to what type of contraceptives should be used.

17

Plaintiff's complaint alleges the non-diverse defendants "knew or should have known" that the decedent suffered from AVM and, therefore, should have warned the decedent that use of the oral contraceptive YAZ placed her at greater risk. Expanding on this bare claim found in the complaint, plaintiff asserts in her response to the motion to dismiss (which incorporates argument she raised in the motion to remand), via her own affidavit, that plaintiff had two conversations with defendant Sauzek regarding the use of YAZ and whether there were alternative drugs available. Plaintiff's affidavit provides that she spoke with defendant Sauzek about YAZ "on the parking lot of the Sparta Country Club." (Exhibit C, Doc. 7.) Plaintiff avers that at that time she asked Sauzek, in her capacity as a pharmacist, for "further information about YAZ." *Id.* The plaintiff further provides that during the second conversation, Sauzek "volunteered that she and Seamus Kloos had found a couple of contraceptives that were different from YAZ," and that "Leslie Sauzek did not counsel me against YAZ and I understood from her that YAZ was an appropriate drug for my daughter, Sophia Martin." *Id.* Plaintiff further avers that prior to filling the YAZ prescription for the decedent, she called Moody's Pharmacy and spoke with defendant Kloos and "specifically asked Seamus Kloos for his opinion regarding the drug, YAZ, and its use. I also asked Mr. Kloos if I should have my daughter's doctor prescribe a different drug. Mr. Kloos counseled me that YAZ would be good for Sophia. Mr. Kloos did not ask for any further information regarding Sophia's medical history and did not defer to Sophia's physician." *Id.*

It is, however, the requisite specific, individualized knowledge that is missing

18

in this case, and therefore, warrants dismissal of the non-diverse defendants, and a finding of fraudulent joinder.  Plaintiff has alleged that these defendants knew or should have known of her decedent's particular risks, and has even averred that she had specific conversations with the pharmacist defendants about decedent's use of YAZ.  But, plaintiff's own recall of those conversations (which defendants deny occurred) only provides that during her conversations she expressed her desire for further "knowledge" about this drug, including whether it would be "good" for the decedent. She does not, notably, aver or allege in the complaint that she advised the Pharmacist defendants that the decedent had any special medical conditions, or that the Pharmacists would have had any other basis for knowledge of decedent's condition before filling the prescription.

Therefore, what is missing from this discourse is anything in the record which would support a finding by this Court that the non-diverse defendants had any reason to know that the decedent suffered from AVM, or was at a higher risk for bleeding and clotting disorders.  Even construing all of the allegations and affidavits in the light most favorable to the plaintiff, the Court simply cannot find that there is a sufficient basis to determine, that Moody's or the Pharmacists had been told by anyone, the decedent, her doctor, or the plaintiff, for example, of decedent's pre-existing medical condition.  Nor is there anything in the record, specifically, in plaintiff's own affidavit, which would show that the pharmacy had, for example, asked of other medical concerns, or  filled other prescriptions for the decedent related to her particular medical condition that would have alerted the non-diverse

19

defendants to the fact that YAZ might be contraindicated for the decedent. Accord, *Happle*, 766 N.E.2d 1123-1129 (where the court found that "such 'special circumstances' were present. . . [and] Wal-Mart had 'special knowledge' of [the plaintiff's] medical condition, i.e. her drug allergies." *Id.* at 1129).  As the *Walton* court noted, absent this nexus of specific knowledge, pharmacies are not "otherwise" subject to suit for failure to warn of possible risks. 643 F.3d at 1000.

Accordingly, the Court **GRANTS** the motion to dismiss filed by defendants K&S Pharmacies of Southern Illinois Ltd., d/b/a Moody Health Mart Pharmacy (improperly named "Moody's Pharmacy"), Seamus N. Kloos, and Leslie Sauzek, and plaintiff's claims in Counts I and II are **DISMISSED with prejudice.**

## IV.   MOTION TO REMAND (Doc. 6)

In light of the Court's finding that the plaintiff cannot sustain a claim against the non-diverse defendants K&S Pharmacies of Southern Illinois Ltd., d/b/a Moody Health Mart Pharmacy (improperly named "Moody's Pharmacy"), Seamus N. Kloos, and Leslie Sauzek, there is now complete diversity.  The second requirement for jurisdiction, under the provisions of 28 U.S.C. § 1332, is that the amount in controversy must exceed $75,000. Plaintiff has not asserted that the amount in controversy is less than this amount, and the plaintiff seeks in excess of $50,000 in her complaint.  The damages sought include wrongful death and negligence, which are most likely to exceed the threshold requirement of in excess of $75,000.  The Seventh Circuit has found the jurisdictional amount satisfied when medical expenses

and other losses amounted to $45,000, with a "modest allowance for pain, suffering, and future losses (either income foregone or medical expenses incurred)." Rising-Moore, 435 F.3d at 815; see also *Andrews v. E.I. Du Pont De Nemours & Co.*, 447 F.3d 510, 514–15 (7th Cir. 2006) (amount in controversy satisfied where complaint sought damages "in excess of $50,000" and alleges "severe and permanent" injuries to the head, ribs, and back; pain and suffering; past and future lost wages; past and future medical expenses; and disabilities). Here, the damages are related to product defect and product liability which lead to the decedent's alleged wrongful death.  The Court is well satisfied that the alleged damages in this case are more than sufficient to meet the requisite amount for diversity jurisdiction.

Therefore, the Court **FINDS** that it has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and the plaintiff's motion to remand is **DENIED.**

**DATE: June 12, 2012**

Digitally signed by
David R. Herndon
Date: 2012.06.12
12:02:47 -05'00'

**Chief United States District Judge**

21